**DEREK SMITH LAW GROUP, PLLC**
CATHERINE W. LOWRY, ESQUIRE
Attorney ID No. 316291
1628 Pine Street
Philadelphia, PA 19103
(267) 857-0832
catherine@dereksmithlaw.com
*Attorneys for Plaintiff Michael Green*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MICHAEL GREEN,<br><br>Plaintiff,<br><br>v.<br><br>RESTORE INTEGRATIVE WELLNESS CENTER, LLC d/b/a RESTORE DISPENSARIES; RACHEL FOWLER; ALLISON SCHOCK; and ROB STANLEY,<br><br>Defendants. | : | Civil Action No. |

**COMPLAINT**

Plaintiff, Michael Green, by and through his attorneys, Derek Smith Law Group, PLLC, by way of this Complaint against Defendants, states as follows:

**NATURE OF THE ACTION**

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e et seq. (amended in 1972, 1978, and by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"); 42 U.S.C. § 1981; and the Pennsylvania Human Relations Act, as amended, 43 P.S. §§ 951 et seq. ("PHRA").

2. Plaintiff seeks damages to redress the injuries he has suffered as a result of being discriminated against, subjected to a hostile work environment, and retaliated against by the Defendants on the basis of his religion, race, and ethnicity.

## PARTIES

3. Plaintiff Michael Green (hereinafter "Plaintiff") is an individual Jewish male who is a resident of the County of Philadelphia within the Eastern District of Pennsylvania.
4. At all times material, Defendant Restore Integrative Wellness Center, LLC, doing business as Restore Dispensaries (hereinafter "Defendant Restore"), was and still is a domestic for-profit limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania, whose principal address was and is 983 Old Eagle School Road, Suite 612, Wayne, Pennsylvania 19087.
5. At all times material, Defendant Restore was doing business as Restore Dispensaries at 8003 Old York Road, Elkins Park, Pennsylvania 19027.
6. At all relevant times, Defendant Restore has continuously employed at least fifteen (15) employees.
7. At all relevant times, Defendant Restore has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).
8. At all times material, Defendant Rachel Fowler (hereinafter "Defendant Fowler") was a District Manager at Defendant Restore.
9. At all times material, Defendant Fowler held a supervisory position over Plaintiff.
10. At all times material, Defendant Allison Schock (hereinafter "Defendant Schock") was the Human Resources Director and/or Manager at Defendant Restore.

11. At all times material, Defendant Schock held a supervisory position over Plaintiff.
12. At all times material, Defendant Rob Stanley (hereinafter "Defendant Stanley") was the Chief Operating Officer of Defendant Restore.
13. At all times material, Defendant Stanley held a supervisory position over Plaintiff.
14. At all times material, Defendants were the joint employers of Plaintiff.

## JURISDICTION AND VENUE

15. This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because it involves questions of federal law under Title VII and 42 U.S.C. § 1981.
16. This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367 because they arise out of the same nucleus of operative facts as Plaintiff's Title VII and 42 U.S.C. § 1981 claims.
17. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because a substantial part of the acts or omissions giving rise to Plaintiff's claims occurred at Defendant Restore's Elkins Park and Fishtown, Pennsylvania dispensary locations, both within the Eastern District of Pennsylvania, and Defendants are subject to personal jurisdiction here.
18. This Court also has personal jurisdiction over Defendants Fowler, Schock, and Stanley because, at all times material, each worked in and directed the conduct giving rise to this action from Defendant Restore's Elkins Park, Pennsylvania location, within this District.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

19. On or about May 13, 2025, Plaintiff timely filed a Charge of Discrimination and Retaliation with the United States Equal Employment Opportunity Commission ("EEOC") and the

Pennsylvania Human Relations Commission ("PHRC"), alleging violations of Title VII, § 1981, and the PHRA.

20. Plaintiff, by and through his attorneys, requested, both on his Charge of Discrimination cover sheet and in the body of the email submission of the Charge, that his Charge be simultaneously filed with the PHRC and "any other State or local agency with whom [the EEOC has] a work sharing agreement."

21. On or about July 20, 2026, Plaintiff filed a Supplemental Charge with the EEOC which detailed additional instances of retaliation by Defendants.

22. On or about July 31, 2026, the EEOC issued, and Plaintiff received, his Notice of Right to Sue for his Supplemental Charge filed on July 20, 2026.

23. On or about August 5, 2026, the EEOC issued, and Plaintiff received, his Notice of Right to Sue for his Charge of Discrimination and Retaliation filed on May 13, 2025.

24. This action is being commenced within ninety (90) days of Plaintiff's receipt of each Notice of Right to Sue.

25. As more than one (1) year has passed since the filing of Plaintiff's original Charge of Discrimination and Retaliation on May 13, 2025, Plaintiff's PHRA claims arising from the allegations in that Charge are ripe pursuant to 43 P.S. § 962(c)(1).[1]

26. Plaintiff has complied with all administrative prerequisites to bring the claims asserted in this Complaint.

[1] Plaintiff reserves the right to seek leave to amend to assert PHRA claims arising from the Supplemental Charge (filed July 20, 2026) once the one-year deferral period under 43 P.S. § 962(c)(1) expires on July 20, 2027.

## MATERIAL FACTS

27. Plaintiff is an individual Jewish male. Plaintiff's religion, race, and ethnicity (Jewish) are protected characteristics.

28. On or about September 1, 2024, Plaintiff began his employment with Defendant Restore as a manager.

29. Throughout his employment, Plaintiff was a dedicated employee who regularly arrived for his shifts early and performed his duties diligently.

30. On or about October 25, 2024, while Plaintiff was completing a vault audit in the management office at Defendant Restore, an office shared among members of management, Defendant Fowler entered to observe him, as Plaintiff was still in manager training.

31. While observing Plaintiff, Defendant Fowler stated to him, "You are a lot to deal with, are you a Jew?"

32. Plaintiff, taken aback and unsure how to respond to Defendant Fowler's antisemitic remark, initially remained silent. After a pause, feeling that he needed to say something, Plaintiff told Defendant Fowler that he was "half Italian."

33. Despite being distraught and emotionally upset by what had transpired, Plaintiff attempted to continue with his workday as best he could.

34. On or about November 2, 2024, Plaintiff was in Defendant Restore's vault picking products for customers.

35. While Plaintiff was in the vault, another Defendant Restore employee, Damir Brooks, grabbed a Defendant Restore product out of Plaintiff's hand and stated, "This is my vault," and "Go to your office," or words to that effect.

36. As Damir Brooks was leaving the vault, he turned to Plaintiff and exclaimed, "There are no Zionists here" and "there are no Jews here!"

37. Upon information and belief, Defendant Fowler had spoken negatively about Plaintiff to Damir Brooks because of Plaintiff's Jewish religion, ethnicity, and race, as Plaintiff had never informed Damir Brooks that he was Jewish.
38. Damir Brooks's discriminatory, derogatory, and unlawful comments caused Plaintiff to feel extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.
39. On or about November 3, 2024, Plaintiff reported Damir Brooks's conduct to Defendant Fowler via his Defendant Restore-issued email.
40. Defendant Fowler did not respond to Plaintiff's report.
41. Upon information and belief, Defendant Fowler took no action to address Damir Brooks's conduct.
42. On or about November 4, 2024, Plaintiff advised Defendant Restore that he needed time off to attend the funeral of a close family member.
43. The funeral was a Jewish memorial service, as the obituary that Plaintiff provided to Defendant Restore reflected.
44. After Plaintiff requested time off to attend the funeral, Defendant Fowler began to harass Plaintiff about the funeral and his need for time off, including by insisting that Plaintiff locate his own shift replacements while he attended the funeral.
45. Upon information and belief, Defendant Fowler caused another employee of Defendant Restore to contact Plaintiff in order to harass him and disrupt his mourning process.
46. Upon information and belief, Defendant Fowler did not similarly harass employees of other religions or ethnicities when they required time off to attend a funeral.
47. Defendant Fowler's unlawful, discriminatory, and harassing conduct caused Plaintiff to feel extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

48. On or about November 6, 2024, Plaintiff again reported the unlawful discrimination he had been forced to endure, including Defendant Fowler's antisemitic comment and the hostile conduct directed at him, this time to Defendant Schock in Human Resources, via his Defendant Restore-issued email.

49. Plaintiff's written report to Defendant Schock included a copy of his earlier email to Defendant Fowler.

50. By email later that same day, Defendant Schock acknowledged receipt of Plaintiff's complaint, represented that Defendant Restore took Plaintiff's concerns seriously, and advised that Defendant Restore would investigate the concerns Plaintiff had raised.

51. Defendant Schock instructed Plaintiff not to report to work for the next two (2) days and advised that a meeting would follow.

52. Defendant Schock arranged a virtual meeting between Plaintiff, Defendant Schock, and Defendant Stanley to take place on or about November 7, 2024.

53. During the November 7, 2024, meeting, Plaintiff reported the above-described unlawful discrimination he had been forced to endure at the hands of Defendant Fowler and Damir Brooks.

54. Plaintiff also requested that Defendant Restore provide additional sensitivity and anti-discrimination training for its employees.

55. After Plaintiff reported what had occurred and made his request for additional training, Defendant Stanley left the meeting twice, for approximately five minutes each time, to attend to another matter. During both absences, Defendant Schock made only small talk with Plaintiff and did not address his complaints of discrimination.

56. Upon returning to the meeting the second time, Defendant Stanley advised Plaintiff that Defendant Restore would not be engaging in any additional training, that Defendant Restore would pay Plaintiff a severance, told Plaintiff "good luck," and left the meeting.
57. Plaintiff has not been permitted to return to work since the November 7, 2024, meeting.
58. On or about November 21, 2024, Plaintiff received a deposit in his bank account from Defendant Restore.
59. Although Plaintiff had worked only a few days during the applicable pay period, the payment was for Plaintiff's full weekly pay.
60. The November 21, 2024, payment was the "severance" that Defendant Stanley had referenced during the November 7, 2024, virtual meeting and constituted Defendant Restore's final act of terminating Plaintiff's employment.
61. Plaintiff did not resign his employment; rather, Defendant Restore terminated Plaintiff's employment.
62. Upon information and belief, Defendants terminated Plaintiff's employment because he is Jewish and because he opposed and reported Defendants' unlawful discrimination.
63. The foregoing are just some examples of the discrimination and retaliation to which Defendants subjected Plaintiff.
64. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will suffer the loss of income, bonuses, benefits, and other compensation that such employment entails, as well as future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.
65. Plaintiff has further experienced emotional distress as a result of Defendants' conduct.

66. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, entitling Plaintiff to an award of punitive damages.

67. Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

68. Plaintiff claims a continuous practice of discrimination and retaliation and claims a continuing violation, and makes all claims herein under the continuing violations doctrine.

69. On or about July 13, 2026, while Plaintiff's EEOC Charge of Discrimination and Retaliation, filed May 13, 2025, remained pending and under active investigation, Plaintiff, solely in his capacity as a certified medical marijuana patient and member of the public, placed an online order for medical marijuana with Defendant Restore.

70. Plaintiff has been diagnosed with Crohn's disease for approximately twenty-five (25) years and is a duly certified medical marijuana patient under the Pennsylvania Medical Marijuana Act.

71. Plaintiff had been a customer of Defendant Restore in good standing before, during, and after his employment, and had lawfully purchased medical marijuana at Defendant Restore's dispensaries without incident, including as recently as October 2024. Plaintiff was not banned from Defendant Restore's dispensaries at the time his employment was terminated in November 2024, and Defendant Restore never notified him of any ban.

72. Plaintiff traveled to Defendant Restore's dispensary on Frankford Avenue in the Fishtown section of Philadelphia to pick up and pay for his order, presented his valid Pennsylvania medical marijuana identification card, and was admitted through Defendant Restore's security screening.

73. When Plaintiff presented his order and identification at the register, Defendant Restore's employee summoned a manager, who, after reviewing Plaintiff's information for approximately thirty (30) seconds, informed Plaintiff that he was "banned" from the store and would not be permitted to complete his purchase. No reason was ever provided to Plaintiff as, upon information and belief, the manager could not identify any reason for the ban.

74. At approximately 11:00 a.m. that same day, Defendant Restore sent Plaintiff an email affirmatively canceling his pending order.

75. Plaintiff engaged in no misconduct at, and had no history of any incident at, any of Defendant Restore's locations. Plaintiff has never been banned from any medical marijuana dispensary other than Defendant Restore's, and on the same day he was turned away by Defendant Restore, he lawfully purchased medical marijuana at another licensed Pennsylvania dispensary without incident.

76. Upon information and belief, Defendant Restore barred Plaintiff from its dispensaries and canceled his order because he engaged in protected activity by filing and pursuing his EEOC Charge of Discrimination and Retaliation, which remained pending and under active investigation at the time.

77. On or about July 20, 2026, Plaintiff filed a Supplemental Charge with the EEOC detailing the foregoing retaliatory conduct.

78. As a result of Defendant Restore's retaliatory conduct in barring Plaintiff from its dispensaries and canceling his order, Plaintiff has suffered humiliation, embarrassment, emotional distress, and other harm, including being denied access to medicine he lawfully uses to manage a serious medical condition.

79. Defendant Restore's conduct in retaliating against Plaintiff was malicious, willful, and conducted with full knowledge of Plaintiff's protected activity, entitling Plaintiff to an award of punitive damages.

80. Defendant Restore's retaliatory conduct in July 2026 is part of, and consistent with, the same continuing pattern and practice of retaliation against Plaintiff alleged elsewhere in this Complaint.

**COUNT I**
**RELIGIOUS DISCRIMINATION**
**UNDER TITLE VII**
**(Against Defendant Restore only)**

81. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if set forth fully herein.

82. This claim is authorized and instituted pursuant to the provisions of Title VII, for relief based upon the unlawful employment practices of Defendant Restore. Plaintiff complains of Defendant Restore's violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's religion.

83. Section 703 of Title VII, 42 U.S.C. § 2000e-2(a)(1), provides, in relevant part, that it shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

84. Judaism is a religion protected under Title VII, and Title VII prohibits discrimination and harassment against employees because they are Jewish.

85. Defendant Restore engaged in unlawful employment practices prohibited by Title VII by intentionally discriminating against Plaintiff because of his religion (Jewish), including by subjecting him to disparate treatment and terminating his employment.

86. Defendant Restore cannot show any legitimate nondiscriminatory reasons for its employment practices and any reasons proffered by Defendant Restore for its actions against Plaintiff are pretextual and can readily be disbelieved.

87. Defendant Restore acted with the intent to discriminate.

88. Defendant Restore acted upon a continuing course of conduct.

89. As a result of Defendant Restore's violations of Title VII, Plaintiff has suffered damages including but not limited to past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**COUNT II**
**RACE AND NATIONAL ORIGIN DISCRIMINATION**
**UNDER TITLE VII**
**(Against Defendant Restore only)**

90. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if set forth fully herein.

91. Title VII prohibits discrimination in employment on the basis of race and national origin. 42 U.S.C. § 2000e-2(a)(1).

92. Discrimination and harassment directed at an individual because he is Jewish may constitute discrimination on the basis of race and/or national origin under Title VII, in addition to religion, because antisemitism frequently reflects bias against Jews as a people, ethnicity, or ancestry rather than solely as a matter of religious belief. *Cf. Shaare Tefila Congregation v. Cobb*, 481 U.S. 615, 617-18 (1987) (holding that Jews may state a claim of racial

discrimination under 42 U.S.C. § 1982 because Jews were considered a distinct race at the time the statute was enacted); *see also United States EEOC v. Trs. of the Univ. of Pa.*, 827 F. Supp. 3d 554, 564 (E.D. Pa. 2026) (recounting EEOC Commissioner's charge alleging Penn "engaged in a pattern or practice of harassment based on national origin, religion, and/or race against Jewish employees, in violation of Title VII").

93. Defendant Restore's employees, including Damir Brooks, directed comments at Plaintiff referencing "Zionists," reflecting animus tied to Plaintiff's Jewish ancestry, ethnicity, and identification with the Jewish people and homeland, in addition to his religious identity.

94. Defendant Restore engaged in unlawful employment practices prohibited by Title VII by discriminating against Plaintiff because of his race and/or national origin (Jewish), including by subjecting him to disparate treatment and terminating his employment.

95. Defendant Restore cannot show any legitimate nondiscriminatory reasons for its employment practices and any reasons proffered by Defendant Restore for its actions against Plaintiff are pretextual and can readily be disbelieved.

96. Defendant Restore acted with the intent to discriminate.

97. Defendant Restore acted upon a continuing course of conduct.

98. As a result of Defendant Restore's violations of Title VII, Plaintiff has suffered damages including but not limited to past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**COUNT III**
**HOSTILE WORK ENVIRONMENT**
**UNDER TITLE VII**
**(Against Defendant Restore only)**

99. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if set forth fully herein.

100. Title VII prohibits hostile work environment harassment, defined as unwanted comments or conduct regarding the plaintiff's protected characteristics that have the purpose or effect of unreasonably interfering with the terms and conditions of the plaintiff's employment. *Harris v. Forklift Systems*, 510 U.S. 17, 21 (1993).

101. An employer is vicariously liable for supervisor harassment that "culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765 (1998).

102. Respondeat superior liability for the acts of non-supervisory employees exists where the defendant knew or should have known of the harassment and failed to take prompt remedial action. *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1486 (3d Cir. 1990).

103. Employer liability for co-worker harassment also exists where the employer failed to provide a reasonable avenue for complaint. *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 105 (3d Cir. 2009).

104. Harassment is actionable where it is severe or pervasive; a single sufficiently severe incident, including the use of an unambiguous epithet by a supervisor, may be enough to state a hostile work environment claim. *Castleberry v. STI Group*, 863 F.3d 259, 264-66 (3d Cir. 2017).

105. Here, Defendant Restore's conduct occurred because of Plaintiff's legally protected characteristics (religion, race, and ethnicity) and was severe or pervasive enough to make a

reasonable person of the same protected classes believe that the conditions of employment were altered and that the working environment was intimidating, hostile, or abusive.

106. The discriminatory conduct directly referred to Plaintiff's religion, race, and ethnicity, including Defendant Fowler's statement, "You are a lot to deal with, are you a Jew?" and Damir Brooks's statements that "There are no Zionists here" and "there are no Jews here!"

107. Plaintiff's supervisors had the authority to control Plaintiff's work environment, and they abused that authority to create a hostile work environment.

108. Plaintiff subjectively perceived the discriminatory comments and conduct as unwelcome, hostile, and abusive, and that perception was objectively reasonable under the totality of the circumstances.

109. The conduct was emotionally damaging and humiliating, and unreasonably interfered with Plaintiff's work performance and the terms and conditions of his employment.

110. Defendant Restore failed to take prompt and effective remedial action and instead terminated Plaintiff's employment.

111. As a result of Defendant Restore's violations of Title VII, Plaintiff has suffered damages including but not limited to past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**COUNT IV**
**RETALIATION**
**UNDER TITLE VII**
**(Against Defendant Restore only)**

112. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if set forth fully herein.

113. Title VII protects employees from retaliation for attempting to exercise their rights under the Act. 42 U.S.C. § 2000e-3(a) makes it an unlawful employment practice for an employer to discriminate against any employee because he has opposed any practice made unlawful by Title VII, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII.

114. The Supreme Court has held that a cause of action for retaliation under Title VII lies whenever the employer responds to protected activity in such a way that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & S.F. Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

115. Informal complaints and protests can constitute protected activity under the "opposition" clause of 42 U.S.C. § 2000e-3(a). *Moore v. City of Philadelphia*, 461 F.3d 331, 343 (3d Cir. 2006).

116. A plaintiff need not prove the merits of the underlying discrimination complaint, but only that he was acting under a good faith, reasonable belief that a violation existed. *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir. 1996).

117. Here, Plaintiff engaged in protected activity by opposing and reporting the unlawful discrimination he experienced, including by reporting Defendant Fowler's and Damir Brooks's discriminatory conduct to Defendant Fowler and Defendant Schock, and by advocating during the November 7, 2024, meeting for corrective measures, including additional anti-discrimination training, to address that discrimination.

118. Plaintiff acted under a reasonable, good faith belief that his right, and/or the right of others, to be free from discrimination on the basis of religion, race, and ethnicity was being violated.

119. Plaintiff was subjected to a materially adverse action when, immediately after engaging in protected activity, Defendant Restore ceased permitting him to work and terminated his employment.

120. There was a causal connection between Defendant Restore's materially adverse action and Plaintiff's protected activity, as demonstrated by, among other things, the unusually suggestive temporal proximity between Plaintiff's complaints and his termination, *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997), and evidence of antagonism and a change in demeanor toward Plaintiff following his protected activity, *Kachmar v. SunGard Data Sys., Inc.,* 109 F.3d 173, 178 (3d Cir. 1997) (citing *Robinson v. Se. Pa. Transp. Auth.*, 982 F.2d 892, 895 (3d Cir. 1993)).

121. Plaintiff separately engaged in protected activity by filing and pursuing his EEOC Charge of Discrimination and Retaliation on May 13, 2025.

122. Title VII's anti-retaliation provision protects former employees from post-employment retaliation, including retaliation unconnected to the employment relationship itself. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 345-46 (1997) (holding that "employee" in 42 U.S.C. § 2000e-3(a) includes former employees).

123. On July 13, 2026, while Plaintiff's Charge remained pending and under active investigation, Defendant Restore subjected Plaintiff to an additional materially adverse action by barring him from its dispensaries and canceling his pending order, notwithstanding that Plaintiff had purchased from Defendant Restore without incident both before and after his termination.

124. There is a causal connection between Plaintiff's protected activity in filing and pursuing his EEOC Charge and Defendant Restore's decision to bar him and cancel his order, as

demonstrated by, among other things, Defendant Restore's inability to articulate any legitimate reason for the ban and Plaintiff's clean history at every other dispensary he has patronized.

125. As a result of Defendant Restore's violations of Title VII, Plaintiff has suffered damages including but not limited to past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**COUNT V**
**DISCRIMINATION**
**UNDER § 1981**
**(Against all named Defendants)**

126. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if set forth fully herein.

127. Section 1981 prohibits race discrimination in the making and enforcing of contracts, including the making, performance, modification, and termination of contracts and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. § 1981.

128. Jewish individuals constitute a protected racial and/or ethnic group for purposes of § 1981. *See Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987); *Shaare Tefila*, 481 U.S. at 617-18; *Smith v. Specialty Pool Contrs.*, No. 02:07cv1464, 2008 U.S. Dist. LEXIS 72551, at *9 (W.D. Pa. Sept. 24, 2008) (holding that persons of Jewish ancestry are a distinct race within the protection of 42 U.S.C. § 1981); *Powell v. Independence Blue Cross, Inc.*, No. 95-2509, 1997 U.S. Dist. LEXIS 3866, *18 (E.D. Pa. Mar. 25, 1997) (holding that "1981 must be read to encompass discrimination against a plaintiff because of his Jewish ancestry or ethnicity").

129. Under § 1981, both employers and individual employees can be liable for discrimination in employment. *See Cardenas v. Massey*, 269 F.3d 251, 268 (3d Cir. 2001); *Al-Khazraji v. Saint Francis College*, 784 F.2d 505, 518 (3d Cir. 1986) ("[E]mployees of a corporation may become personally liable when they intentionally cause an infringement of rights protected by § 1981, regardless of whether the corporation may also be held liable.").

130. Defendants violated § 1981 by intentionally discriminating against Plaintiff because of his race and/or ethnicity (Jewish) in a serious and tangible way with respect to his compensation, terms, conditions, and/or privileges of employment, including by terminating his employment.

131. Plaintiff's race and/or ethnicity was a but-for cause of Defendants' employment actions.

132. Any reason proffered by Defendants for their actions against Plaintiff is pretextual and can readily be disbelieved.

133. Defendants acted with malice or reckless indifference to Plaintiff's federally protected rights, and as a result there should be an award of punitive damages against Defendants.

134. As a result of Defendants' violations of § 1981, Plaintiff has suffered damages including but not limited to past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**COUNT VI**
**HOSTILE WORK ENVIRONMENT**
**UNDER § 1981**
**(Against all named Defendants)**

135. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if set forth fully herein.

136. The standards for a hostile work environment claim are the same under Title VII and § 1981. *See Verdin v. Weeks Marine, Inc.*, 124 F. App'x 92, 95 (3d Cir. 2005).

137. Unlike Title VII, § 1981 permits individual liability: employees, officers, and directors who intentionally cause an infringement of rights protected by § 1981 may be held liable regardless of whether the employer is also liable. *See Cardenas*, 269 F.3d at 268; *Al-Khazraji*, 784 F.2d at 518.

138. Defendants subjected Plaintiff to harassment motivated by Plaintiff's race and/or ethnicity (Jewish).

139. Defendants' conduct was not welcomed by Plaintiff.

140. Defendants' conduct was so severe or pervasive that a reasonable person in Plaintiff's position would find the work environment to be hostile or abusive, and Plaintiff in fact found his work environment to be hostile and abusive as a result of Defendants' conduct. *See Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993).

141. As a result of the hostile work environment, Plaintiff suffered a tangible employment action, including the termination of his employment.

142. Defendant Restore failed to exercise reasonable care to prevent racial harassment in the workplace by failing to establish an explicit policy against harassment on the basis of race and failing to fully communicate such a policy to its employees. Defendants failed to provide Plaintiff a reasonable way to report harassment to higher management and failed to take reasonable steps to promptly correct the harassing behavior he raised.

143. Defendants acted upon a continuing course of conduct.

144. Defendants acted with malice or reckless indifference to Plaintiff's federally protected rights, and as a result there should be an award of punitive damages against Defendants.

145. As a result of Defendants' violations of § 1981, Plaintiff has suffered damages including but not limited to past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**COUNT VII**
**RETALIATION**
**UNDER § 1981**
**(Against all named Defendants)**

146. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if set forth fully herein.

147. The Supreme Court has held that retaliation claims are cognizable under § 1981. *CBOCS West, Inc. v. Humphries*, 553 U.S. 442 (2008).

148. The legal standards for a retaliation claim under § 1981 are generally the same as those applicable to a Title VII retaliation claim. *See Cardenas*, 269 F.3d at 263 (to establish a prima facie retaliation claim, a plaintiff must show (1) that he engaged in protected activity; (2) that he suffered an adverse employment action; and (3) that there was a causal connection between the protected activity and the adverse employment action).

149. Under § 1981, individuals who intentionally cause an infringement of rights protected by § 1981 may be held personally liable regardless of whether the employer is also liable. *See Cardenas*, 269 F.3d at 268; *Al-Khazraji*, 784 F.2d at 518.

150. Here, Defendants retaliated against Plaintiff because of his protected activity, which included opposing and reporting the race- and ethnicity-based discrimination he experienced, including Defendant Fowler's and Damir Brooks's comments referencing his Jewish identity.

151. Defendants acted upon a continuing course of conduct.

152. Plaintiff was acting under a reasonable, good faith belief that his right, and/or the right of others, to be free from discrimination on the basis of race and/or ethnicity was being violated.

153. Plaintiff was subjected to a materially adverse action at the time of, or after, his protected conduct, including the termination of his employment.

154. There was a causal connection between Defendants' materially adverse action and Plaintiff's protected activity, as demonstrated by, among other things, the unusually suggestive temporal proximity between events, *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997), and Defendants' antagonism and change in demeanor toward Plaintiff after he engaged in protected activity, *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 178 (3d Cir. 1997).

155. Defendants acted with malice or reckless indifference to Plaintiff's federally protected rights, and as a result there should be an award of punitive damages against Defendants.

156. As a result of Defendants' violations of § 1981, Plaintiff has suffered damages including but not limited to past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**COUNT VIII**
**DISCRIMINATION**
**UNDER STATE LAW (PHRA)**
**(Against Defendant Restore only)**

157. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if set forth fully herein.

158. Section 955(a) of the PHRA makes it an unlawful discriminatory practice for any employer, because of the race, color, religious creed, ancestry, age, sex, national origin, or non-job-related handicap or disability of any individual, to refuse to hire or employ, to bar or

discharge from employment, or otherwise to discriminate against such individual with respect to compensation, hire, tenure, terms, conditions, or privileges of employment, if the individual is the best able and most competent to perform the services required. 43 P.S. § 955(a).

159. Defendant Restore engaged in unlawful discriminatory practices by discriminating against Plaintiff because of his religious creed, race, and ancestry (Jewish), including by subjecting him to a hostile work environment and terminating his employment.

160. Defendant Restore's discriminatory animus toward Plaintiff on the basis of his religious creed, race, and ancestry was a determinative factor in its employment decisions regarding Plaintiff.

161. Any reason proffered by Defendant Restore for its actions against Plaintiff is pretextual and can readily be disbelieved.

162. Defendant Restore acted upon a continuing course of conduct.

163. Plaintiff hereby makes a claim against Defendant Restore under all of the applicable subsections of 43 P.S. § 955.

164. As a result of Defendant Restore's violations of the PHRA, Plaintiff has suffered damages including but not limited to past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**COUNT IX**
**AIDING AND ABETTING**
**UNDER STATE LAW (PHRA)**
**(Against the Individual Defendants)**

165. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if set forth fully herein.

166. Section 955(e) of the PHRA makes it an unlawful discriminatory practice for any person, employer, employment agency, labor organization, or employee to aid, abet, incite, compel, or coerce the doing of any act declared by the PHRA to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of the Act. 43 P.S. § 955(e).

167. A supervisor who knew or should have known of discrimination or harassment and who failed to take prompt and appropriate remedial action may be held individually liable for aiding and abetting under Section 955(e). *See Dici v. Commonwealth of Pennsylvania*, 91 F.3d 542, 552 (3d Cir. 1996).

168. Defendant Fowler aided and abetted unlawful discriminatory practices in violation of 43 P.S. § 955(e), including by directing antisemitic and discriminatory conduct at Plaintiff and by failing to take action in response to the discrimination reported to her.

169. Defendant Stanley aided and abetted unlawful discriminatory practices in violation of 43 P.S. § 955(e), including by rejecting Plaintiff's request for anti-discrimination training, terminating Plaintiff's employment in retaliation for his reported complaints, and failing to take prompt and appropriate remedial action after Plaintiff reported unlawful discrimination to him.

170. Defendant Schock aided and abetted unlawful discriminatory practices in violation of 43 P.S. § 955(e), including by failing to take prompt and appropriate remedial action after

Plaintiff reported unlawful discrimination to her, and by remaining present throughout the November 7, 2024, meeting without intervening on Plaintiff's behalf as Defendant Stanley rejected his request for training and terminated his employment.

171. As a result of the Individual Defendants' violations of the PHRA, Plaintiff has suffered damages including but not limited to past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**COUNT X**
**RETALIATION**
**UNDER STATE LAW (PHRA)**
**(Against all named Defendants)**

172. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if set forth fully herein.

173. Section 955(d) of the PHRA makes it an unlawful discriminatory practice for any person, employer, employment agency, or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by the Act, or because such individual has made a charge, testified, or assisted in any manner in any investigation, proceeding, or hearing under the Act. 43 P.S. § 955(d).

174. PHRA retaliation claims are analyzed under the same legal framework as Title VII retaliation claims. *See Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002) ("the PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently").

175. Here, Plaintiff engaged in protected activity by opposing and reporting the unlawful discrimination he experienced, including by reporting Defendant Fowler's and Damir Brooks's discriminatory conduct to Defendant Fowler and Defendant Schock.

176. Plaintiff was acting under a reasonable, good faith belief that his right, and/or the right of others, to be free from discrimination on the basis of religion, race, and ethnicity was being violated.

177. Plaintiff was subjected to a materially adverse action when, at the time of and after engaging in protected activity, Defendants ceased permitting him to work and terminated his employment.

178. There was a causal connection between Defendants' materially adverse action and Plaintiff's protected activity, as demonstrated by, among other things, the unusually suggestive temporal proximity between events, *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997), and Defendants' antagonism and change in demeanor toward Plaintiff after he engaged in protected activity, *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 178 (3d Cir. 1997).

179. As a result of Defendants' violations of the PHRA, Plaintiff has suffered damages including but not limited to past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

## **DEMAND TO PRESERVE EVIDENCE**

Defendants are hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to the claims alleged herein, to Plaintiff's claims for damages, and to any defenses to same, including but not limited to electronic data

storage, employment files, personnel files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, security and surveillance footage, and any other information or data that may be relevant to any claim or defense in this litigation.

## JURY DEMAND

Plaintiff requests a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against each Defendant found liable on the claims asserted against that Defendant, jointly and severally as to any claims for which liability is shared, in an amount to be determined at trial, plus interest, including but not limited to all emotional distress, back pay and front pay, compensatory damages, punitive damages as available by law, attorneys' fees, costs, and disbursements of this action; and for such other and further relief as the Court deems just and proper.

**DEREK SMITH LAW GROUP, PLLC**

By: /s/ Catherine W. Lowry
Catherine W. Lowry, Esquire
1628 Pine Street
Philadelphia, Pennsylvania 19103
catherine@dereksmithlaw.com
*Attorneys for Plaintiff Michael Green*

Dated: September 14, 2026